UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**

**AFFIDAVIT**

**DOMINICO MORBLEY**                                                      **DEFENDANT**


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Travis R. Steward, being duly sworn, do hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am employed as a Task Force Officer ("TFO") with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been such since October 2021. I am currently assigned to the Lexington Resident Office ("LRO") Enforcement Group in Lexington, Kentucky. My current duty assignment includes, but is not limited to, investigating complex drug conspiracies, and organizations and individuals involved in the trafficking of controlled substances. Prior to my current assignment with the DEA, I was a Police Officer for the Nicholasville Police Department for a period of approximately 6 years. During my employment at the Nicholasville Police Department, I specifically worked narcotics investigations as a detective for approximately 1.5 years. I am now employed by the Jessamine County Sheriff's Office and have been a narcotics detective for approximately 5 years. I am authorized and have the responsibility to investigate persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering (18 U.S.C. § 1956 and 1957), and illegal

possession of weapons (18 U.S.C. §§ 922 and 924(c)(1)). In my capacity as a DEA TFO, I am authorized to arrest persons for violations of federal law, including for those offenses listed above.

2. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state and local law enforcement officers during the course of their official duties. The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause.

3. I have participated in drug investigations, including possession and distribution of fentanyl, marijuana, cocaine, heroin, methamphetamine, and other drugs. Through my training, education and experience, I have become familiar with the manner in which persons involved in the trafficking of controlled substances conduct their illicit activities, and their methods of operation and attempts to avoid detection from law enforcement. Specifically:

    a. I have conducted street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    b. I am familiar with the appearance and street names of various drugs, including, heroin, fentanyl, cocaine, cocaine base (crack cocaine), methamphetamine, marijuana and other substances;

    c. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

    d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

    e. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such; and

    f. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry;

    g. I have consulted with Special Agents and Task Force Officers who have extensive experience in this field, and they have provided me with guidance and knowledge regarding surveillance operations and drug investigations; and

    h. I have worked in an undercover capacity in order to identify targets of investigations related to drug trafficking.

4. The investigation to date indicates that there is probable cause to believe that on January 15, 2026, in Fayette County, in the Eastern District of Kentucky, Dominico Morbley did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841. The following facts support the finding of probable cause.

## PROBABLE CAUSE

5. In late 2025 (exact date known to law enforcement but shielded here to protect the identity of a confidential witness), members of the DEA LRO began an investigation into Dominico Morbley ("Morbley"), who one or more confidential informants previously identified as a significant distributor of fentanyl in the central Kentucky area. Ultimately, during the course of this investigation, DEA LRO identified Morbley's residence (263 Elkhorn Green Place in Georgetown, Kentucky), multiple vehicles owned or used by him, and his telephone number. More importantly, your affiant identified 3780 Camelot Drive, APT #A, Lexington, Kentucky ("the Camelot apartment") as being a narcotics trafficking location and a suspected stash location for

Morbley's narcotics supply. Through training and experience, your affiant knows that it is common for large scale narcotics traffickers to utilize third-party locations to store their narcotics supply (as opposed to storing it at their own residence) to insulate themselves from criminal liability by adding a layer of separation from their product and themselves.

6. In late 2025 (exact date known to law enforcement but shielded here to protect the identity of the confidential witness), DEA LRO assisted a local law enforcement agency with the investigation of a fentanyl trafficker who would later provide information to law enforcement. This trafficker is hereafter referred to as "cooperating witness" or "CW". Surveillance revealed that the CW was likely supplied with drugs by a black male driving a silver Honda Accord with Tennessee registration plate BSS3931.  The CW was then found to be in possession of approximately 130 grams of suspected fentanyl.  Members of the DEA LRO later conducted an interview of CW. During the interview, DEA LRO confirmed that the black male was Morbley. CW also confirmed that Morbley supplied him with fentanyl and provided law enforcement with Morbley's number: 502-503-0830 (hereafter "the 0830 account").  Your affiant then utilized a reliable law enforcement database and observed that the 0830 account was listed to Dominico Morbley or James Brown.

7. Soon thereafter, your affiant then applied for and was granted a state of Kentucky search warrant to obtain real time geo-location data for the 0830 account. Verizon then began providing geo-location data for the device associated with the 0830 account.  Using this geo-location data, which placed the device associated with the 0830 account in the vicinity of the Camelot apartment, your affiant then located Morbley's Honda Accord with Tennessee license plate BSS3931 backed into a parking spot in front of the Camelot apartment.

8. In late 2025 (exact date known to law enforcement but shielded here to protect the identity of the confidential witness), the CW engaged in a controlled transaction of subject matter relevant to the drug trade. During the controlled transaction, CW had a conversation with Morbley and one of his associates. This conversation, captured with a recording device, further confirmed that Morbley was a fentanyl trafficker.

9. Through the course of this investigation into Morbley, your affiant determined that, while Morbley resides at 263 Elkhorn Green Place in Georgetown, Kentucky, he primarily conducts drug trafficking activities at the Camelot apartment.

10. Surveillance in late 2025 revealed Morbley's other vehicles—a Honda Accord with Kentucky registration T5V360, registered to Dominico Morbley, and a Kia Soul with Kentucky registration T2M580, registered to Dominico Morbley—at the Camelot apartment.

11. On December 18, 2025, members of the DEA installed an electronic camera in the vicinity of the Camelot apartment. Your affiant monitored this electronic camera from December 18, 2025, through January 15, 1026, and observed Morbley conduct numerous suspected narcotics transactions. For all of the suspected narcotics transactions, Morbley would arrive at the Camelot apartment and utilize a key to enter it. Morbley would then be observed exiting the apartment to conduct the suspected transaction by handing an item through the driver side windows of the vehicles waiting in the parking lot. Your affiant observed Morbley conduct suspected narcotics transactions at the Camelot apartment on the following dates in late 2025 and early 2026: December 18th, December 20th, December 21st, December 22nd, December 25th, December 30th, December 31st, January 2nd, and January 9th. All of these transactions are captured and preserved on the electronic camera.

12. On January 15th, 2026, members of the DEA LRO executed a state of Kentucky search warrant for Morbley's person and the Camelot apartment. Located in the Camelot apartment was approximately 302 grams of suspected fentanyl and approximately 292 grams of methamphetamine. The methamphetamine was later field tested by DEA TFO Trevor Harris utilizing TrueNarc with a positive result of methamphetamine. DEA also located inside of the apartment a kilo-press, which is utilized to compress narcotics into a brick like form, along with narcotics processing equipment such as blenders, latex gloves and digital scales.

13. Members of the DEA also executed a search warrant at Morbley's residence in Georgetown, which yielded no evidence of drug trafficking activity.

14. Following the aforementioned searches, Morbley was then transported to the DEA Lexington Resident Office and was interviewed by your affiant, TFO Tom Clements and FBI SA Robinson. Following a rights advisement, Morbley admitted ownership/possession of the narcotics at the Camelot apartment.

15. All of the narcotics have been sent to the DEA lab for testing.

16. Morbley was then lodged at Fayette County Detention Center for state trafficking charges of fentanyl and methamphetamine.

17. In conclusion, members of the DEA LRO identified Dominico Morbley as a significant narcotics trafficker in the central Kentucky area through surveillance, the execution of state search warrants, and cooperating witness statements. Members of the DEA LRO identified the Camelot apartment as Morbley's stash location. Members of the DEA conducted state search warrants at the Camelot apartment and located a large quantity of fentanyl, methamphetamine, and drug processing equipment. The amount of suspected fentanyl and methamphetamine that was located at the Camelot apartment is not a user amount of narcotics. Rather, the seized narcotics constitute

approximately 1,510 dosage units of fentanyl and approximately 1,460 dosage units of methamphetamine.[1]

### CONCLUSION

18. I believe that the facts set forth above support that there is probable cause to believe that on or about January 15th, 2026 in Fayette County, in the Eastern District of Kentucky, Dominico Morbley did knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture or substance containing fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841 and did knowingly and intentionally possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C § 841.

I declare under the penalty of perjury that the above statement is true and correct to the best of my knowledge, information, and belief.

/s/ Travis R. Steward
_____
Travis R. Steward, Task Force Officer
Drug Enforcement Administration

Sworn to before me on _____January 16_____, 2026.

_____
MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE

---

[1] Your affiant has conducted numerous interviews of narcotics addicts, specifically fentanyl users, during drug investigations and knows that a typical dosage unit of methamphetamine and fentanyl is approximately $2/10^{ths}$ of a gram.